1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMANTHA RAJAPAKSE,<br><br>               Plaintiff,<br>   v.<br><br>TRUEBLUE et al.,<br><br>               Defendants. | CASE NO. C22-5785-KKE<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING PLAINTIFF'S RULE<br>56(D) MOTION |

This is an employment discrimination case against TrueBlue and PeopleScout (collectively, "Defendants"). Defendants move for summary judgment on all of Plaintiff Samantha Rajapakse's employment claims. Dkt. No. 145. Ms. Rajapakse, proceeding pro se, filed a combined response and motion for continuance under Federal Rule of Civil Procedure 56(d). Dkt. No. 148. The Court has considered the parties' briefing[1] and the balance of the record and finds Ms. Rajapakse has failed to show Defendants harassed, discriminated, or retaliated against her based on her age or disability. Ms. Rajapakse has also failed to identify any evidence that would change this outcome. The Court grants Defendants' motion for summary judgment and denies Ms. Rajapakse's request for a Rule 56(d) continuance.

---

[1] The Court refers to the parties' briefing using the CM/ECF page numbers.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 1

# I.   BACKGROUND

## A.   Facts

Ms. Rajapakse is over the age of 40 and has type 2 diabetes.  Dkt. No. 149 ¶ 1.  The facts giving rise to this complaint occurred during Ms. Rajapakse's employment with Defendants.[2]

On December 6, 2021, Defendants hired Ms. Rajapakse as a remote Recruiting Coordinator for PeopleScout's client, the American Red Cross.  Dkt. No. 20-4 at 1, Dkt. No. 146 ¶ 2.  As a Recruiting Coordinator, Ms. Rajapakse was tasked with contacting by phone and then processing candidates to work at different American Red Cross events.  Dkt. No. 146 ¶ 4.  The Recruiting Coordinator position was entirely remote, and Ms. Rajapakse worked out of her home on a computer supplied by Defendants.  *Id.* ¶ 3.  Ms. Rajapakse alleges that when she started working, she experienced immediate problems with her computer and difficulty getting help to fix her ongoing access issues.  Dkt. No. 149 ¶¶ 5–8.  Lynn Wallace, Operations Manager at the time of Ms. Rajapakse's employment, reported that "this initial issue was due to an accidental misspelling of her last name on [the American Red Cross's] end," which was corrected "within a week or two." Dkt. No. 146 ¶ 7.  This misspelling is confirmed by Ms. Rajapakse's initial log-on email instructions.  *See* Dkt. No. 50-1 at 15 (spelling last name incorrectly as "Rajapaske").

On February 10, 2022, Defendants drafted a "Counseling Document" confirming that Ms. Rajapakse was issued a verbal warning based on "Performance; Communication; Attendance." Dkt. No. 146-1 at 6.  The parties agree that this warning arose after Ms. Rajapakse reported having computer issues that inhibited her from completing certain tasks and that, during a discussion of these issues with Ms. Wallace, Ms. Rajapakse refused to share her screen when requested and then

---

[2] Defendants argue that TrueBlue should be dismissed from the case because PeopleScout was Ms. Rajapakse's employer.  *See* Dkt. No. 145 at 15.  While Ms. Rajapakse does not dispute this, for purposes of this order it is not necessary to differentiate between the two Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 2

1

2

logged off for the day.  *Id.*, Dkt. No. 149 ¶ 9.  According to Ms. Rajapakse, she was merely following the directions of Defendants' IT department.  Dkt. No. 149 ¶¶ 9–10.

3

4

5

6

7

8

9

10

11

12

On February 11, 2022, Ms. Rajapakse sent an email to Ms. Wallace and Sam Katz, another Operations Manager (Dkt. No. 146 ¶ 16), complaining about the counseling document and verbal warning, stating, "[t]his has become retaliation" and "due to the toxic environment that I am being subjected to I was looking for employment elsewhere."  Dkt. No. 147-1 at 15.  This email did not mention Ms. Rajapakse's age or disability.  *Id.*  Around this time, Ms. Rajapakse also made a complaint of workplace harassment to Defendants' internal hotline.  *Id*. at 14.[3]  The hotline complaint describes how Ms. Rajapakse's coworker, Lolita Jones, told her to "live with" her computer problems, and that when Ms. Rajapakse reported this to Ms. Wallace, Ms. Jones's harassment "got more intense."  *Id.*  This complaint did not mention Ms. Rajapakse's age or disability.  *Id.*

13

14

15

16

17

18

19

20

21

In response to her hotline complaint, a representative from Defendants' human resources department[4] contacted Ms. Rajapakse to discuss the allegations.  Dkt. No. 147-1 at 7.  On February 23, 2022, a human resources representative emailed Ms. Rajapakse to let her know they completed their investigation and while they could not share the details, they "want[ed] to assure you that the appropriate action has been taken and steps have been put in place to avoid any similar conflict going forward regarding the complaint. Please report any further unprofessional communications by your leadership or barriers in having the appropriate tools to do your work effectively."  Dkt. No. 148-5.  Ms. Rajapakse allegedly filed a complaint, No. 440-2022-0399, with the Equal Employment Opportunity Commission ("EEOC") in February 2022.  Dkt. No. 7 at 3, Dkt. No. 148

22

23

24

---

[3] Neither party explains who drafted the narrative in the hotline complaint document.

[4] During her employment, Ms. Rajapakse had interactions with multiple individuals from the human resources department.  For simplicity, the order refers to communications with any human resources representatives of either Defendant as "human resources."

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S RULE 56(D) MOTION - 3

at 6 (listing the number as 440-2023-03991), Dkt. No. 149 ¶ 14 (listing the number as 440-220-03991).[5]

On April 5, 2022, Ms. Rajapakse lost access to certain electronic work accounts. Dkt. No. 146-1 at 18–20. When this issue was reported to Ms. Wallace, she contacted the American Red Cross (*id.* at 13–16) and Defendants' human resources (*id.* at 18), who reached out to Defendants' IT department (*id.* at 25, Dkt. No. 146 ¶ 23). Ultimately, Ms. Wallace reported that the loss of access was an IT error by the American Red Cross arising from deleting the misspelled account, which inadvertently deleted Ms. Rajapakse's active account. Dkt. No. 146 ¶ 24, Dkt. No. 146-1 at 21. The issue was resolved within one day. On April 6, 2022, Ms. Rajapakse's access to the American Red Cross account was restored. Dkt. No. 146-1 at 21. Nonetheless, the parties agree that Ms. Rajapakse did not work after this date. Dkt. No. 146 ¶ 25, Dkt. No. 149 ¶ 20.

On April 11, 2022, Ms. Rajapakse sent an email to TrueBlue's CEO and human resources, stating "I have first hand statements made in violation of harassment, discrimination, and bullying made by management" and that she had been "the butt of jokes and statements at the daily meeting" and "[s]tatements in the meeting made fun of candidates with disabilities, calling HR for being bullied and promis[cu]ous grandmothers." Dkt. No. 148-7. In this message, Ms. Rajapakse stated she would be filing an EEOC complaint and that she has "amended my EEOC complaint to reflect the new evidence." *Id.* Ms. Rajapakse also stated "this [is] a wrongful termination for my actions of speaking out." *Id.*

Over the next few days, human resources confirmed to Ms. Rajapakse verbally (Dkt. No. 35[6], Dkt. No. 41-2) and by email that Ms. Rajapakse had not been terminated (Dkt. No. 147-1 at

---

[5] Neither party has provided a copy of this initial complaint to the Court.

[6] Defendants do not object to this audio recording being considered, however the Court notes that Ms. Rajapakse does not inform the other participants on the call that she is recording them. In some states such consent is required. *See,*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 4

29).  In response, Ms. Rajapakse acknowledged Defendants' position that she was not terminated and referenced an upcoming May 27, 2022 hearing with the EEOC.  *Id*. at 2.  During these communications, Ms. Rajapakse reported that her A1C levels were spiking due to her type 2 diabetes and stress.  Dkt. No. 35, Dkt. No. 47-2 at 2.  Defendants connected Ms. Rajapakse with the "leave team to offer [her] the ability to explore whether [she could] qualify for any leave options."  Dkt. No. 47-2 at 2.  Ms. Rajapakse allegedly filed another complaint with the EEOC on April 12, 2022 with case number 551-2022-04316.  Dkt. No. 7 at 3.

On April 15, 2022, Defendants' counsel reached out to Ms. Rajapakse regarding her references to an EEOC complaint and stating they had not received notice of such a complaint.  Dkt. No. 148-8.  Ms. Rajapakse responded, allegedly providing the complaint, and stating she would be filing "a secondary complaint regarding my termination on April 5, 2022."  Dkt. No. 47-2 at 4.

On May 20, 2022, UnitedHealthcare Division: Benefit Services mailed a COBRA continuation coverage election notice to Ms. Rajapakse stating her "NonCOBRA – Active Coverage End Date" would be May 31, 2022, due to "an event, Reduction of Hours, that will result in loss of coverage under the TrueBlue, Inc." plan.  Dkt. No. 21-2.  Because Ms. Rajapakse had not worked since April 5, 2022, she was not working enough hours to retain her benefits.  Dkt. No. 151 at 11.  The purpose of the COBRA letter was to inform her of this change.  *Id.*

On June 22, 2022, human resources emailed Ms. Rajapakse in response to her request for information on how to return her laptop.[7]  That email explained that "[e]quipment return directives are automatically generated at the time of resignation or termination" but that no such request

---

*e.g.*, WASH. REV. CODE § 9.73.030 (providing that it is unlawful to record a private conversation without first obtaining the consent of all the persons engaged in the conversation).

[7] The record does not include evidence of when or how Ms. Rajapakse asked to return her laptop.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 5

1
2
3
4

would be generated since Ms. Rajapakse was still employed.  Dkt. No. 148-11 at 1.  Ms. Rajapakse

sent multiple emails objecting to the statement that she was still employed and informed

Defendants that she was seeking unemployment benefits because she had been terminated.  Dkt.

Nos. 148-11, 148-12.

5
6
7
8
9
10

On August 3, 2022, in response to a request for information by Ms. Rajapakse, EEOC

Senior Federal Investigator Curtis Smith explained that Ms. Rajapakse's complaint number 551-

2022-04316 "was closed by the Seattle Field Office on April 21, 2022" because "it is a duplicate

to the charge # 440-2022-03991" as "they both had the same allegation of discrimination."  Dkt.

No. 147-1 at 47.  On September 30, 2022, the EEOC issued a Dismissal and Notice of Rights on

charge 440-2022-03991.  *See id.* at 21.

11
12
13
14
15
16
17
18
19
20
21
22
23

On October 17, 2022, Ms. Rajapakse filed this case against Defendants.  Dkt. No. 1.  On

October 25, 2022, the EEOC revoked its September 30, 2022 Dismissal and Notice of Rights letter

and stated it was reconsidering the merits of the case.  Dkt. No. 147-1 at 21.  On October 28, 2022,

Ms. Rajapakse submitted an Amended Charge of Discrimination under charge number 440-2022-

3991 (Dkt. No. 147-1 at 22) "based on Age, Disability, Retaliation, and involve issues of Training,

Retaliation, Harassment, Discipline, Discharge that are alleged to have occurred on or about

5/30/22."  Dkt. No. 147-1 at 17–18.  In the amended charge, Ms. Rajapakse reports having been

singled out "due to myself having ongoing issues with the company computer and certain

software," belittled and referred to as "rude and disrespectful," and that Ms. Jones and Ms. Wallace

"would discuss candidates' disabilities and things of a sexual nature" during meetings, including

"potentially hiring a promiscuous grandmother."  *Id.* at 22.  Ms. Rajapakse also stated, "I never

mentioned any discrimination on the basis of my age, or any other protected activity enforced by

EEOC statuses, management was well aware of my disability and age."  *Id.*

24

In December 2022, while this case was pending, the parties agreed that Ms. Rajapakse would return to her position.  On December 2, 2022, human resources contacted Ms. Rajapakse about her return, stating they would provide a replacement computer and a "return label to return the current laptop" and stating, "As we have mentioned previously, we do not have a completed I-9 verification form on file; therefore, you need to complete a new one prior to your return."  Dkt. No. 147-1 at 35.  Ms. Rajapakse responded that she had already donated her  computer and that "you should have all my information already." *Id.* at 34–35.  In response, and over multiple emails, Defendants' human resources explained that Ms. Rajapakse's I-9 "was processed under extraordinary requirements flowing from the COVID 19 pandemic" and now that "those pandemic-induced circumstances have eased, we are reprocessing I-9s that were processed under pandemic standards." *Id.* at 32–34.  Ms. Rajapakse stated she had either been working illegally for four months or her information had been compromised. *Id*.  On December 8, 2022, Ms. Rajapakse emailed human resources withdrawing her request to return to work "[d]ue to the continue[d] harassment and retaliation of false statements made on my employment status." *Id.* at 37.

## B.    Procedural History

Ms. Rajapakse alleges claims of harassment, discrimination, and retaliation under Title VII, 42 U.S.C. § 2000(e); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.  Dkt. No. 7.  To date, this Court has ruled on a multitude of non-dispositive motions related to, among other things, discovery.  Most recently, on February 28, 2024, the Court held a status conference to discuss Ms. Rajapakse's pending discovery motions and motion to amend the complaint. *See* Dkt. Nos. 143, 144.  In lieu of considering the pending discovery motions, the parties and the Court agreed that the parties would move forward with dispositive motion briefing, retaining the ability to make a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

motion under Federal Rule of Civil Procedure 56(d) if any party could identify any information necessary to oppose a summary judgment motion that had not been produced in discovery. *Id.*

On March 4, 2024, Defendants filed their motion for summary judgment on all claims. Dkt. No. 145. Ms. Rajapakse submitted a joint motion responding to Defendants' motion and seeking her personnel file and a deposition of Ms. Wallace under Rule 56(d). Dkt. No. 148. Defendants replied (Dkt. No. 151), and their motion is now ripe for resolution.

## II.   ANALYSIS

### A.   Legal Standards

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical

1   doubt is insufficient (*id.* at 586), as are conclusory, non-specific allegations (*Lujan*, 497 U.S. at

2   888–89).

3   **B.      Ms. Rajapakse Fails to State a Title VII Claim.**

4          Title VII prohibits covered employers from engaging in certain acts and practices because

5   of an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Defendants

6   argue that Ms. Rajapakse's Title VII claim fails as a matter of law because she does not allege any

7   of Defendants' actions were based on her "race, color, religion, sex, or national origin."  Dkt. No.

8   145 at 16.[8]  The Court agrees.  The Court reviewed the complaint and documents filed in opposition

9   to this motion and nowhere does Ms. Rajapakse allege any action, whether unlawful or not, was

10  taken due to her race, color, religion, sex, or national origin.  *See* Dkt. Nos. 7, 148, 149 at 1 (Ms.

11  Rajapakse's declaration stating "I am in a protected class under Title VII which I am over 40 and

12  I have a disability since November 2008").  Title VII does not provide employment protections

13  based on age or disability status.[9]  And Ms. Rajapakse does not identify her race, color, religion,

14  sex, or national origin in her complaint or briefing, nor does she allege that she suffered

15  discrimination on account of them.  Accordingly, Ms. Rajapakse's claims will be evaluated under

16  the statutes that provide employment protections based on disability status and age.  Her Title VII

17  claim is dismissed.

18

19

20

---

21  [8] Defendants also argue that Ms. Rajapakse has failed to exhaust her administrative remedies because she failed to
    raise any Title VII claim in her EEOC complaints.  Dkt. No. 145 at 16.  Neither party clearly explained the history of
22  this case with the EEOC, nor have they provided the full EEOC submission(s), so the Court cannot evaluate this
    argument.

23  [9] Even if Ms. Rajapakse had properly alleged a Title VII claim, like her remaining claims, there is insufficient evidence
    to support such a claim.  *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 888 (9th Cir. 1994), *as amended on denial of reh'g*
24  (July 14, 1994) ("We combine the Title VII and ADEA claims for analysis because the burdens of proof and persuasion
    are the same.").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 9

**C.      Ms. Rajapakse's Harassment Claim Fails for Lack of Evidence.**

Ms. Rajapakse's complaint and amended EEOC charge allege conduct she characterizes as "harassment," which the Court construes as an effort to bring a hostile work environment harassment claim under the ADA and ADEA.  Dkt. No. 7 at 2 (alleging "Plaintiff was harassed and retaliated"), Dkt. No. 147-1 at 17 (notice of amended charge of discrimination stating "[t]he circumstances of the alleged discrimination are based on Age, Disability, Retaliation, and involve issues of Training, Retaliation, Harassment …").  But Ms. Rajapakse has failed to allege, or provide evidence of, a hostile work environment.

Under both the ADA and the ADEA, a hostile work environment claim requires evidence of "severe or pervasive harassment."  *Bradley v. Swedish Health Servs.*, No. C22-0581 TSZ, 2023 WL 8879121, at *7 (W.D. Wash. Dec. 22, 2023) (requiring such evidence for an ADA claim), *Jaroslawsky v. City & Cnty. of San Francisco*, 671 F. App'x 998, 999 (9th Cir. 2016) (requiring such evidence for an ADEA claim).  "[E]vidence of 'isolated offensive remarks' and instances of 'unfair treatment' are insufficient to support a hostile work environment claim[.]"  *Denning v. Cnty. of Washoe*, 799 F. App'x 547, 548 (9th Cir. 2020) (quoting *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003)).  Construing the facts in the light most favorable to Ms. Rajapakse, the record reflects, at most, that her coworkers and supervisor unfortunately described candidates as "promis[cu]ous grandmothers" (Dkt. No. 148-7), "made fun [of] candidates with disabilities" (*id.*, Dkt. No. 147-1 at 22), and referred to Ms. Rajapakse as "disrespectful" and implied she was incompetent (Dkt. No. 147-1 at 22).  This is not sufficient to support a hostile work environment claim.  *See, e.g.*, *Denning*, 799 F. App'x at 547–48 (finding insufficient evidence to support a hostile work environment claim where supervisor "made two derogatory statements about [plaintiff's] disability over a three-year period, told [plaintiff's] co-workers that she was a 'problem child' and a 'trouble-maker,' assigned [plaintiff] longer shifts and less

desirable tasks, and 'subjected [plaintiff] to excessive scrutiny'"); *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1058–59 (D. Haw. 2015) (statement that younger employees are more tech savvy than the plaintiff was insufficient to show a hostile work environment).

Ms. Rajapakse's claims of harassment under the ADA and ADEA are therefore dismissed with prejudice.

**D.**     **Ms. Rajapakse's Discrimination and Retaliation Claims Fail Because Defendants Provide Legitimate, Non-Discriminatory Reasons for Each Challenged Act.**

Ms. Rajapakse alleges age discrimination, disability discrimination, and retaliation for engaging in protected activity under the ADA and ADEA.  Dkt. No. 7.  Because Ms. Rajapakse does not provide any direct evidence[10] of age or disability discrimination or retaliation, the Court applies the *McDonnell Douglas* burden-shifting framework to each claim.  Under this framework, "the plaintiff must first adduce sufficient evidence of a prima facie case[,]" then "the defendant must present evidence of a 'legitimate, nondiscriminatory reason' for the challenged conduct[,]" and "then the burden of production returns to the plaintiff, who must offer evidence that the proffered nondiscriminatory reason is pretextual." *Turner v. Ass'n of Apartment Owners of Wailea Point Vill.*, 739 F. App'x 874, 875–76 (9th Cir. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (applying framework to ADA discrimination claim); *see Glass v. Intel Corp.*, 345 F. App'x 254, 255 (9th Cir. 2009) (applying framework to ADA and ADEA discrimination claims); *see Merlo v. McDonough*, No. 22-55503, 2023 WL 4364409, at *1 (9th Cir. July 6, 2023) ("Retaliation claims brought under the ADEA proceed under the *McDonnell Douglas* burden-shifting framework."); *see Adonican v. Cnty. of Los Angeles*, 103 F. App'x 631, 632 (9th Cir. 2004) ("We have adopted the *McDonnell Douglas* burden-shifting rules for

---

[10] "While the line between direct and circumstantial evidence can be elusive … 'direct evidence' has been 'defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Opara v. Yellen*, 57 F.4th 709, 722–23 (9th Cir. 2023) (quoting *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004)).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 11

retaliation claims under the ADA."). A plaintiff's evidence to show the nondiscriminatory reason is pretextual must be specific and substantial. *Skipps v. Mayorkas*, No. 21-56184, 2023 WL 3477835, at *1 (9th Cir. May 16, 2023). The evidence must be more than "uncorroborated, self-serving speculation." *Korkosz v. Clark Cnty.*, 379 F. App'x 593, 596 (9th Cir. 2010).

To support a prima facie case of disability discrimination, Ms. Rajapakse must show she "(1) is disabled; (2) is qualified [to perform her job]; and (3) suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). To support a prima facie case of age discrimination, Ms. Rajapakse must show "(1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably." *Est. of McGough v. Lockheed Martin*, 12 F. App'x 464, 469 (9th Cir. 2001). Lastly, to support her retaliation claims under the ADA and ADEA, Ms. Rajapakse must show she engaged in a protected activity, she suffered an adverse employment action, and a causal link exists between the protected activity and the adverse action. *See Garity v. APWU Nat'l Lab. Org.*, 840 F. App'x 924, 927 (9th Cir. 2020) (ADA retaliation); *Black v. Grant Cnty. Pub. Util. Dist.*, 820 F. App'x 547, 550–51 (9th Cir. 2020) (ADEA retaliation).

For each claim, the Court is not convinced Ms. Rajapakse has met her burden to allege an adverse employment action or a connection between such action and her age/disability/protected activity. But the Court need not decide whether Ms. Rajapakse has made out a prima facie case for each of her claims, because Defendants provide legitimate, non-discriminatory reasons and explanations for each action Ms. Rajapakse complains of, and Ms. Rajapakse fails to offer any

evidence that these reasons are pretextual.[11]  For the following reasons, the Court finds that Defendants are therefore entitled to summary judgment on each claim.

First, Ms. Rajapakse complains of the verbal warning she received in February 2022.  Dkt. No. 7 at 6, Dkt. No. 146-1 at 6, Dkt. No. 148 at 5, Dkt. No. 149 ¶¶ 9–11.  Through the Wallace declaration (Dkt. No. 146 ¶¶ 9, 11–13) and the narrative of the verbal warning (Dkt. No. 146-1 at 6), it is clear that the verbal warning was due to Plaintiff's poor work performance and Ms. Rajapakse's refusal to share her screen to address the alleged computer issues.  Ms. Rajapakse does not provide any evidence that these reasons for the warning were pretextual and, in fact, her evidence supports finding that Defendants' reasons for the warning were nondiscriminatory.  *See* Dkt. No. 149 ¶ 9 (admitting she refused to share her screen), *id*. ¶ 12 (stating her work performance documentation was at times lost, missing, or invalid).  While Ms. Rajapakse disputes the fairness and accuracy of the statements in the verbal warning document, she does not dispute that Defendants believed the statements to be true.  The warning therefore does not support an age or disability discrimination or retaliation claim.

Second, Ms. Rajapakse claims she was terminated on April 5, 2022 when her work software and/or computer ceased functioning.  Dkt. No. 7 at 3, Dkt. No. 148 at 6, Dkt. No. 148-6, Dkt. No. 149 ¶¶ 19–20.  Defendants have put forth extensive evidence showing Ms. Rajapakse was informed multiple times and in multiple ways that she was not in fact terminated on April 5, 2022.  *See, e.g.*, Dkt. No. 147-1 at 29.  Defendants also provided evidence showing that the temporary deactivation of her credentials was the result of an error by the American Red Cross's

---

[11] In light of Ms. Rajapakse's pro se status, the Court endeavors to identify the at-issue actions by reviewing the complaint, briefing, and evidence of what Ms. Rajapakse complained of at the time and to the EEOC, taking a broad view of what could be considered an adverse employment action related to her age or disability.  To the extent Ms. Rajapakse complains of other actions, the Court does not consider them because they lack detail, specificity, or supporting evidence. *Faulkner v. Wausau Bus. Ins.* Co., 571 F. App'x 566, 569 (9th Cir. 2014) (confirming district courts need not consider evidence that is "buried in briefs" or "in disorganized, scattershot evidentiary submissions").

IT department.  Dkt. No. 146 ¶ 24, Dkt. No. 146-1 at 21.  Further, the evidence shows Defendants investigated the deactivation as soon as it occurred, undermining any argument that the deactivation was intentional.  *See, e.g.*, Dkt. No. 146-1 at 13–16, 18–20.[12]  Defendants have shown that Ms. Rajapakse's temporary deactivation was not discriminatory or retaliatory, but an accident, and Ms. Rajapakse does not provide any evidence or explanation to show the deactivation was purposeful and due to her age, disability, or protected activity.

Third, Ms. Rajapakse claims she was terminated on May 20, 2022, according to the COBRA letter she received.  Dkt. No. 7 at 8, Dkt. No. 21-2, Dkt. No. 148 at 6, Dkt. No. 149 ¶ 22.  But a review of the letter (Dkt. No. 21-2 at 2) and Defendants' explanation (Dkt. No. 151 at 11) shows that Ms. Rajapakse's benefits were stopped, not because she was terminated, but because of a "Reduction of Hours."  Ms. Rajapakse admits she stopped working after April 5, 2022.  Dkt. No. 149 ¶ 20.  There is nothing in the record here to suggest the termination of Ms. Rajapakse's benefits was caused by anything other than Ms. Rajapakse's failure to report working any hours after April 5, 2022, let alone that said termination was due to Ms. Rajapakse's age, disability, or prior protected activity.  The COBRA letter does not support a discrimination or retaliation claim.

Fourth, Ms. Rajapakse alleges Defendants falsely reported that she had requested Family Medical Leave Act ("FMLA") leave, which was "reported to potential employers including a position as Paralegal II for the United States Small Business Administration causing me to be removed from being interviewed."  Dkt. No. 149 ¶ 21; *see also* Dkt. No. 7 at 7–8.  There is no

---

[12] The only evidence Ms. Rajapakse provides in response is an undated screenshot of her Microsoft Teams chat that says "Lolita [Jones] removed Rajapakse, Samantha from the chat." Dkt. No. 41-1. Even ignoring any concerns arising from the fact that this screenshot is undated, Ms. Rajapakse does not explain why this screenshot is irreconcilable with the IT error described by Defendants. Even if the deactivation was done purposefully by Ms. Jones, and there is no evidence that it was, there is also no evidence from which the Court could infer that she did this due to Ms. Rajapakse's disability, age, or protected activity instead of general personal animus. *See Franken v. McCarthy*, No. 2:19-CV-2172 AWI EPG, 2020 WL 2615021, at *3 (E.D. Cal. May 22, 2020) (collecting cases holding that ostracism, disparaging comments, and lack of general civility are not actionable as adverse employment actions nor create a hostile work environment). None of the offensive statements about age or disability are attributed to Ms. Jones directly, nor alleged to be about Ms. Rajapakse's age or disability. *See, e.g.*, Dkt. No. 147-1 at 22, Dkt. No. 148-7.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S RULE 56(D) MOTION - 14

1
2
3
4
5
6

evidence that Defendants "reported" a leave request to anyone.  Rather, the only evidence in the record reflects that Defendants provided Ms. Rajapakse leave resources based on her complaints to human resources of elevated A1C levels and stress.  Dkt. No. 47-2 at 2.  Ms. Rajapakse provides no evidence or explanation to the contrary.  *See Korkosz*, 379 F. App'x at 596 (finding "uncorroborated, self-serving speculation" insufficient to prove pretext on summary judgment (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002))).

7
8
9
10
11
12
13

Finally, Ms. Rajapakse complains that when she requested to return to work in December 2022, Defendants required her to resubmit her I-9 documentation.  Dkt. No. 48-1, Dkt. No. 147-1 at 32–35, Dkt. No. 148 at 7, Dkt. No. 149 ¶¶ 25–26.  Nowhere does Ms. Rajapakse argue this requirement was due to her age, disability, or protected activity.  Even if she had, Defendants thoroughly explained in their emails to Ms. Rajapakse why such I-9 documentation was needed to return her to active working status.  Dkt. No. 147-1 at 32–35.  Ms. Rajapakse does not meaningfully rebut this explanation.  *See* Dkt. No. 48-2 at 2.

14
15
16
17
18
19
20
21

The Court acknowledges that Ms. Rajapakse had a difficult time during her employment with Defendants and is sympathetic to the confusion and frustration she has expressed with respect to the above incidents.  However, even if Ms. Rajapakse could establish a prima facie case of discrimination and retaliation, the Court accepts and relies upon Defendants' legitimate, nondiscriminatory reasons for each alleged adverse employment action and finds that Ms. Rajapakse has failed to meet her burden to present evidence exposing Defendants' reasons as pretextual.  The Court therefore grants Defendants' motion for summary judgment on all of Ms. Rajapakse's discrimination and retaliation claims.

22
23
24

**E.     Ms. Rajapakse Does Not Show the Evidence Sought Under Rule 56(d) Exists or Is Essential to Oppose Summary Judgment.**

A court may defer, delay, or deny a motion for summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]"  Fed. R. Civ. P. 56(d).  "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  In her response, Ms. Rajapakse references Defendants' failure to provide her full personnel file and failure to provide Ms. Wallace for a deposition.  *See* Dkt. No. 148 at 3–4, 12–13.  Defendants insist her complete personnel file has already been provided, despite Ms. Rajapakse's failure to request it in discovery.  Dkt. No. 130 ¶¶ 3–4.

The Court need not reach the issue of the adequacy of Defendants' production.  Dispositively, Ms. Rajapakse repeats throughout her response that the Court can rule on summary judgment.  Dkt. No. 148 at 1 ("both parties have agreed this case is ripe for final deposition of summary judgment" and that Ms. Rajapakse agreed to "remove any pending pleadings including further discoveries to move forward to allow both parties to enter summary judgment"), *id.* at 11 ("Evidence already entered into the record in the Court supports motive, and other purpose with intent, knowledge, and lack of their actions being an accident."), *id.* at 14 (stating that Ms. Rajapakse is entitled to summary judgment based on the existing evidence).  Based on these statements, Ms. Rajapakse makes it clear that the identified evidence is *not* essential to her opposition to summary judgment.  Moreover, while Ms. Rajapakse lists general categories of information she thinks should be included in personnel files, she does not claim any of those categories exist in her case and are missing from her personnel file, let alone that this information

would impact summary judgment.  Similarly, Ms. Rajapakse does not explain what testimony she seeks from Ms. Wallace or any reason such testimony would impact her ability to survive summary judgment.  Ms. Rajapakse fails to carry her burden to show a continuance under Rule 56(d) is warranted.

Both parties agree that the Court can decide summary judgment.  Therefore, Ms. Rajapakse's Rule 56(d) motion, to the extent it was made, is denied.

### III.   CONCLUSION

For the above reasons, the Court GRANTS Defendants' motion for summary judgment. Dkt. No. 145.  Each of Ms. Rajapakse's claims is dismissed with prejudice.  The Clerk is instructed to enter judgment for Defendants and close the case.

Dated this 31st day of May, 2024.

Kymberly K. Evanson
United States District Judge